## BREUL *v.* SMITH.

PATENTS; INTERFERENCES; CONSTRUCTION OF ISSUE; REDUCTION
TO PRACTICE.

1. When a view of the ground covered by the claims of an issue of interference has been accepted by the parties, and has prevailed in the Patent Office, it should not be departed from in the final decision if an injustice might result from such departure.

2. The Patent Office should not give so liberal a construction to the terms of an issue of an interference as to enable it to include a structure which had previously been held to be patentably distinct therefrom.

3. A device which differs from the terms of the issue of an interference in a particular feature which the Patent Office once held in the same case was sufficient to constitute a patentable distinction, is not a reduction to practice of the issue.

No. 63. Patent Appeals. Submitted January 22, 1897. Decided February 16, 1897.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed.*

The facts are sufficiently stated in the opinion.

*Messrs. Baldwin, Davidson & Wight* for the appellant.

*Mr. H. A. Seymour* and *Mr. J. Edgar Bull* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding between the rival inventors of a wire chain and comes to us on appeal taken by Richard A. Breul from a decision of the acting Commissioner of Patents awarding priority to Friend W. Smith, Jr.

The following is the declared issue of the interference:

"1. A chain the links of which are composed of wire bent to form a loop and eye and the extreme ends of the wire inserted in the loop and bent outwardly to encircle the side wires, the entire encircling portion of the two ends lying approximately in one and the same plane, substantially as set forth.

"2. A chain the links of which are each composed of a single wire bent to form a loop and eye and the extreme ends inserted in the loop and then bent outwardly around the side wires to substantially encircle said side wires, substantially as set forth.

"3. A chain the links of which are each composed of a piece of wire bent to form a loop and eye, the extreme ends of the wire terminating outside of the loop and pointing toward the eye, substantially as set forth."

The appellee claims conception of the invention on November 10, 1885.

On that day the beneficial owner of the present claim, the Smith & Egge Manufacturing Company, of Bridgeport, Conn., received a patent for a new chain which it proceeded to manufacture.

The links of this chain are composed of blanks cut from sheets of metal. The blank has an eye in one end and a shank at the other which runs through the eye of the next blank and is bent over and caught and held in place by a

knob, at the extreme end of which fits a recess, into which it runs when doubled back on itself.

He says it then occurred to him that this blank could be split and the ends bent around in the eye, and hence that it could be made of wire instead of sheet metal, thereby adding tensile strength and saving expense. He made a rough sketch and with his hand bent a piece of wire into a link to illustrate his conception. This link roughly corresponds to that of the issue—the ends run through the loop and are bent outwardly around the side wires.

Breul claims conception of the same invention in December, 1886. He was then in the employ of the Bridgeport Chain Company. After making some models of links bent after the fashion of those of the claim in interference Breul applied for a patent for a chain made of wire links on January 10, 1887, and received the same March 8, 1887, No. 359,054.

The links of the chain as patented are formed of a single wire, and when bent into a loop or eye its ends run *outside* the side wires and are bent inward over them, so as to form a hook without completely encircling them. This chain was called the "Triumph" and has been manufactured and put upon the market in great quantities.

In February, 1893, Breul began to renew experiments with links made by running the ends of the wire *inside* the loop and bending them outwardly and around the side wires, substantially as described in the issue. His application founded thereon was filed June 12, 1894. Smith's application was filed May 17, 1894, and contained the following claims:

"1. A link for chains, consisting of a wire bent to form a loop, after which the two ends of the wire converge and are bent around to form an eye, the ends being passed back into the loop between the side wires at the point where the loop and eye merge into each other and thence outside of the loop around the side wires in the form of hooks which

lie in the same plane with each other, substantially as set forth.

"2. A chain composed of wire links each of which links consists of a single wire having a loop formed therein and an eye, the ends of the wire constituting the loop and eye inserted into the loop between the side wires at a point where the loop and eye merge into each other and thence outside the loop around the side wires and back to the portion of the wire passing into the loop, the two hooks lying in the same plane with each other, substantially as set forth.

"3. The herein-described method of forming a wire chain-link consisting in bending the wire to form a loop and eye, and passing the ends of the wire into the loop between the side wires, and finally bending the extreme ends thereof around the side wires from the inside of the loop outward in the same plane with each other, substantially as set forth."

This application was denied by the special examiner June 5, 1894, because not patentable in view of Breul's patent No. 359,054—the "Triumph" chain. He then amended, setting out six claims, Nos. 1, 4, 5 and 6 of which were rejected on Crandall's patent of April 19, 1881, and No. 2 on Breul's patent aforesaid. Claim 3 of this amendment is the same as No. 2 of the issue. Still another amendment and rejection were made before the claims of the issue were set up, and the interference was declared.

Breul moved to dissolve the interference because of lack of patentability on the ground that the mere insertion of the ends of the wire into the bow or loop and passing them outwardly and the mere turning of the ends over to cause them to encircle the side wires of the said loop did not involve invention. The motion was overruled and the case proceeded on the issues declared. The question of patentability, therefore, of Smith's claims is not before us, and it is conceded that we cannot consider the merits of that motion. *Hisey* v. *Peters*, 6 App. D. C. 68, 70; *Cushman* v. *Lines, ante*, p. 156.

Breul accounts for the delay in applying for a patent on his alleged invention in December, 1886, on the ground that he considered it covered by the patent for the "Triumph" chain, which had been made and sold in quantities. Smith does not account in a satisfactory manner for his long delay. Notwithstanding his discovery on November 10, 1895, no effort was made, according to his own evidence, to make a chain after his plan and model until the autumn of 1891. Then an old machine for making spring-wire garters was taken up and worked on to change and adapt it to making wire chains. In the meantime, on June 8, 1888, the Smith & Egge Company applied for and soon thereafter obtained another patent for sheet-metal chains.

In the view, however, that we have taken of the case it is not necessary to inquire into the question of diligence.

There is some conflict and considerable uncertainty in the testimony respecting the completion of this change in the old machine and its capacity to make the chain in controversy, or, in fact, any practical chain, before the date of Breul's reduction to practice. It seems reasonably clear to us that a chain in particular conformity with the specifications of the issue was not and could not have been made by that machine before said time; but assuming for the purposes of this case that the evidence is sufficient to establish the fact that the piece of small wire chain marked "Smith's Exhibit E" was made on that altered machine some time in the year 1892—about one year before Breul's reduction to practice—the question recurs, was the acting Commissioner right in holding that this was a reduction to practice of the invention as defined in the issue?

The case turns upon the answer to this question. Now the only difference of construction worthy of mention between the links of said "Exhibit E" and the link of the "Triumph" chain lies in the fact that the ends of the wire run *inside* the loop and then bend partially around, the side wires instead of running *outside* and partially around.

Compared with the claims in Smith's original application set forth above "Exhibit E" appears in substantial accord therewith. Yet, as we have seen, those claims were held by the special examiner to have been anticipated by Breul's 1887 patent for said "Triumph" chain. To avoid this and subsequent similar rulings of the examiner, Smith amended from time to time until he formed the claims set out in the issue in controversy. His election to amend in obedience to the suggestions of the examiner necessarily operated a complete abandonment of the original claims of the application to the extent that they are not embodied in the claims of the amendment. *Durham* v. *Seymour*, 6 App. D. C. 78, 89, 90.

If the examiner was right in holding that the original claims had been anticipated by Breul's "Triumph" patent, as we have no doubt he was, his declaration of interference was necessarily founded on the conclusion that there is a substantial difference between the chain of the issue and that of the abandoned claims. This view of substantial— that is to say, of patentable—difference was emphasized by the decision overruling Breul's motion to dissolve the interference.

Whether this last decision was right or wrong, it must be accepted, so far as the present proceeding is concerned, as final and conclusive. .

The issue of patentability has been removed, and the sole question is as to priority merely. *Cushman* v. *Lines, ante,* p. 156.

This probably too narrow view of the ground covered by the several claims of the issue and of the original application and of the Breul patent having prevailed in the Patent Office and been acquiesced in by the parties, could not be departed from in the final decision without injustice to Breul, and yet the Commissioner, to reach his conclusion, was compelled to do so, for we think it follows of necessity that if the new claim differs from the old to such a material

extent as to show patentable novelty, then a completed chain made after the specifications of the old and rejected claims cannot be a reduction to practice under the new ones. Nothing short of a new chain following closely the specifications of the issue of the controversy would answer the purpose.

As before suggested, we must, for the purposes of this particular case, regard the preliminary rulings of the Patent Office tribunals, which have been accepted and acted on by the parties, as conclusive.

Those rulings were, first, that there was not patentable difference between the chain of Smith and the "Triumph" chain of Breul in respect of the manner in which the ends of the wire are made to pass through the loop, and, second, that there is a patentable difference between completely encircling the side wires of the loop with the ends of the wire forming the eye and merely hooking about them without completely or more than half encircling.

Observing then, as we must, this adjudged difference between encircling the side wires instead of merely hooking partly around them in aid of the same general object— namely, the increase of tensile strength—we are bound to hold that a chain which follows the latter plan only cannot be accepted as a reduction to practice of the first one.

Rejecting the said "Exhibit E"—the chain claimed to have been made in 1891 or 1892, in respect of which claim we make no decision—as insufficient to show a reduction to practice of the claims of invention described in the issue, and there being no sufficient proof of any other reduction to practice before that shown by Breul, we are constrained to award priority to the latter.

It follows, therefore, that the decision appealed from must be reversed and the proceedings and decision of this court certified to the Commissioner of Patents, as directed by law, and it is so ordered.

*Reversed.*